In the Matter of GRAND JURY SUBPOENAS. ROBERT M. MORGEN-
THAU, as District Attorney of New York County, Appel-
lant; HERBERT WEEKS, JR., as Clerk of the Family Court of
Suffolk County, et al., Respondents.

First Department, June 16, 1977

*Robert M. Pitler* of counsel *(Harriett Galvin* and *Joseph V. Morello* with him on the brief; *Peter L. Zimroth,* attorney), for appellant.

*Matthew A. Tedone* of counsel *(Natale C. Tedone* with him on the brief; *William Gitelman, County Attorney),* for Chief Clerk of Nassau County, respondent.

*Leonard J. Shore* of counsel *(Howard E. Pachman, County Attorney),* for Clerk of the Family Court, respondent.

LUPIANO, J. On December 7, 1976, a New York County Grand Jury, pursuant to its investigation into the sale of babies in violation of subdivision 6 of section 374 of the Social Services Law,[1] issued two subpoenas duces tecum. One subpoena directed the Clerk of the Family Court of Suffolk County to appear before the Grand Jury and to produce adoption records from January 1, 1973 to November 1, 1976, wherein the parties to the adoption were represented by certain designated attorneys. The other subpoena, issued to the Clerk of the Nassau County Surrogate's Court, requested production of similar material. The Clerk of the Suffolk County Family Court and the Senior Deputy County Attorney of Nassau County moved to vacate the subpoenas asserting that compliance would violate section 114 of the Domestic

---

1. "An authorized agency, as defined in paragraph (a) of subdivision ten of section three hundred seventy-one of this chapter, may charge or accept a fee or other compensation to or from a person or persons with whom it has placed out a child, for the reasonable and necessary expenses of such placement; and no agency, association, corporation, institution, society or organization, except such an authorized agency, and *no person may or shall request, accept or receive any compensation or thing of value, directly or indirectly, for placing out a child;* and no person may or shall pay or give to any person or to any agency, association, corporation, institution, society or organization, except such an authorized agency, any compensation or thing of value for placing out a child.

"This subdivision shall not be construed to prevent the payment of salaries or other compensation by an authorized agency to the officers or employees thereof; nor shall it be construed to prevent the payment by a person with whom a child has been placed out of reasonable and actual medical fees or hospital charges for services rendered in connection with the birth of such child, if such payment is made to the physician or hospital who or which rendered the services or to the natural mother of the child, or to prevent the receipt of such payment by such physician, hospital or mother." (Emphasis supplied.)

Relations Law. That statute which provides for sealing of adoption records states, *inter alia:* "No person shall be allowed access to such sealed records and order and any index thereof except upon an order of a judge or surrogate of the court in which the order was made or of a justice of the supreme court. No order for disclosure or access and inspection shall be granted except on good cause shown and on due notice to the adoptive parents and to such additional persons as the court may direct." In opposing the motions to quash, an Assistant District Attorney affirmed that "Information in the possession of my office shows that certain New York County attorneys maintain a nationwide network to locate and support unwed, pregnant young women. Thereafter these young women are induced to give up their babies to families that the lawyers have previously agreed to supply with infants." A demonstration of specific instances of the illegal placement of children for adoption was set forth.

The initial and critical issue is whether the Grand Jury is a "person" within contemplation of section 114 of the Domestic Relations Law. The purpose of section 114 is to withhold adoption records from public inspection. In an adoption proceeding, the most intimate details of the lives of all parties thereto must be scrutinized in order for the court to determine whether the adoption will promote the best interests of the adoptive child. While records of judicial proceedings are generally available for public inspection, the unique nature of an adoption proceeding necessitates that such records be withheld from the public in order to protect the privacy of all parties involved. That statute, by providing that no person shall have access to these records without a showing of good cause and notice to the adoptive parents, is designed to prevent members of the public from unjustifiably delving into the privacy of those involved in adoptions.

The power of the Grand Jury to investigate criminal activity and to compel persons to appear and testify is exceedingly broad. In *Blair v United States* (250 US 273, 282) the Grand Jury is characterized as "a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." Further, the United States Supreme Court in *Branzburg v Hayes* (408 US 665, 701)

observed: "The role of the grand jury as an important instrument of effective law enforcement necessarily includes an investigatory function with respect to determining whether a crime has been committed and who committed it. To this end it must call witnesses, in the manner best suited to perform its task. 'When the grand jury is performing its investigatory function into a general problem area * * * society's interest is best served by a thorough and extensive investigation.' *Wood v. Georgia,* 370 U.S. 375, 392 (1962). A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' *United States v. Stone,* 429 F. 2d 138, 140 (CA2 1970). Such an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor or the personal knowledge of the grand jurors." Again, in *United States v Calandra* (414 US 338, 345) the Supreme Court declared: "The duty to testify has long been recognized as a basic obligation that every citizen owes his Government * * * '[T]he longstanding principle that "the public * * * has a right to every man's evidence" * * * is particularly applicable to grand jury proceedings.' The duty to testify may on occasion be burdensome and even embarrassing. It may cause injury to a witness' social and economic status. Yet the duty to testify has been regarded as 'so necessary to the administration of justice' that the witness' personal interest in privacy must yield to the public's overriding interest in full disclosure."

Patently, the Grand Jury's subpoena power is not without limits. Nevertheless, any exemption from the duty to give testimony is considered exceptional and presupposes the existence of a weighty and legitimate competing interest deserving of protection. "In [New York] State the Grand Jury derives its power from the Constitution and the acts of the Legislature * * * It is not only 'sworn to inquire of crimes committed or triable in the county' * * * but by statute it is given the power, and the duty is enjoined upon it to 'inquire into all crimes committed or triable in the county, and to present them to the court' [citation]. Traditionally, our courts have afforded the Grand Jury the widest possible latitude in the exercise of these powers and insisted that *in the absence of a clear constitutional or legislative expression they may not be curtailed (People v. Ryback,* 3 NY2d 467; *People ex rel.*

*Hirschberg v. Close,* 1 NY2d 258, 261; *People ex rel. Livingston v. Wyatt,* 186 N.Y. 383, 391; *Matter of Mullen v. Block,* 176 Misc. 442; *People v. Grout,* 85 Misc. 570, 573)." *(People v Stern,* 3 NY2d 658, 661; emphasis supplied.)

Finally, it must be noted that CPL 190.25 (subd 4) provides: "Grand jury proceedings are secret, and no grand juror or other person specified in subdivision three[2] may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding."

Viewing the nature and function of the Grand Jury and its historic role as a means of protection to the citizen as well as a necessary aid to public justice, and giving due consideration to the purpose and intent of section 114 of the Domestic Relations Law, it is concluded that the Grand Jury is not a "person" within the contemplation of section 114 of the Domestic Relations Law.[3] In the absence of a clear legislative expression that the Grand Jury's power may be curtailed by the sealed records provisions of section 114 of the Domestic Relations Law, we perceive no warrant for so limiting that power. Clearly, no precise constitutional expression mandating such curtailment is presented. Indeed, the privacy aspect which so imbued section 114 is safeguarded by the secrecy necessarily imposed on Grand Jury proceedings by statute as delineated above. Further, we declare and forewarn that in light of the overview presented by the policy considerations underlying section 114 of the Domestic Relations Law, any unwarranted, unjustified, and improper impingement on the secrecy of the Grand Jury proceeding will call for the severest censure. Note that section 215.70 of the Penal Law provides that unlawful Grand Jury disclosure is a class B misdemeanor.

Further support for our conclusion is derived from the fact that the Legislature in enacting subdivision 6 of section 374

---

2. Subdivision 3 provides that apart from the deliberations and voting of a Grand Jury when only the grand jurors may be present, the following during the Grand Jury's other proceedings may be present: the District Attorney, clerk, stenographer, interpreter and a public servant holding a witness in custody.

3. If the Legislature intended to embrace the Grand Jury within the ambit of section 114 of the Domestic Relations law, it could have so stated as it did, for example, in subdivision (b) of section 79-h of the Civil Rights Law and CPLR 4506.

and subdivision 2 of section 392 of the Social Services Law[4] may be presumed not to have intended to exempt adoption records from the subpoena power of the Grand Jury. Those sections make criminal the conduct which the Grand Jury in the instant case is investigating: the receipt of compensation for the placing out of children for adoption by someone other than an authorized agency. The purpose behind these sections of the Social Services Law is to prevent trafficking in babies, the buying and selling, in effect, of human beings. It is beyond cavil that the integrity of the adoptive process is paramount and in this light the secrecy aspect of that process is of secondary consideration. To reiterate: in considering the broad investigatory power of the Grand Jury; the lack of any express limit on that power in section 114 of the Domestic Relations Law; the legislative purposes behind the enactments of section 114 of the Domestic Relations Law, subdivision 6 of section 374 and subdivision 2 of section 392 of the Social Services Law and the secrecy of Grand Jury proceedings, and cognizant of the paramount importance of ensuring the integrity of the adoptive process, we must conclude that section 114 is inapplicable to the Grand Jury subpoenas issued in this case.

In conclusion, the argument founded on CPL 610.30 (subds 1 and 3) that the subpoenas issued herein must bear a judicial indorsement in that New York County does not adjoin Nassau or Suffolk Counties is inapplicable. Clearly, the Grand Jury subpoenas issued herein are the criminal process of a superior, not a criminal court, and are effective State-wide (CPL 190.05; CPL 610.30, subd 2).

Accordingly, the orders of the Supreme Court, New York County (POSTEL, J.), both respectively entered March 1, 1977, granting movants-respondents' motions to quash the Grand Jury subpoenas duces tecum, should be reversed, on the law, without costs and disbursements, and the motions should be denied.

SILVERMAN, J. (concurring). I think that section 114 of the Domestic Relations Law applies to Grand Jury subpoenas and in that respect is in essence another rule of confidentiality. However, in this case there was a sufficient showing of "good

---

4. Subdivision 2 of section 389 of the Social Services Law provides: "Any person * * * who * * * violates the provisions of subdivision six of section three hundred seventy-four of this chapter shall be guilty of a misdemeanor, *for the first such offense*. Any person * * * who * * * violates [said provisions] after having been once convicted of violating such provisions, *shall be guilty of a felony"* (emphasis supplied).

cause" within the meaning of the statute so that this court may under the authority of that statute permit the Grand Jury to inspect the records here involved, subject to the safeguards referred to in the majority memorandum. In my view, however, notice should also be given pursuant to section 114 to the adoptive parents.

BIRNS and MARKÈWICH, JJ., concur with LUPIANO, J. P.; SILVERMAN, J., concurs in an opinion.

Two orders, Supreme Court, New York County, each entered on March 1, 1977, unanimously reversed, on the law, without costs and without disbursements, and the motions denied.