Shirley Wohl Kram, J.
This is a proceeding in which the petitioner adoptive parents seek this court’s approval of an adoption arranged by the Talbot-Perkins Children’s Services, an authorized agency.
The child was born in Suffolk County to a 14-year-old unwed mother on August 26, 1975. She surrendered the child for adoptive purposes to the Commissioner of Social Services in Suffolk County on July 23, 1976. The child was placed in foster care paid for by the commissioner where he remained until the adoptive parents took physical custody on December *210 21, 1976. The adoptive parents found the child through Talbot-Perkins, but the child was never in the care of the agency. The commissioner consented to the placement in an instrument dated December 16, 1976.
The investigative report indicates that in every way the adoptive parents are most suitable for this little boy. They are warm and intelligent people and the child has apparently developed very well.
There are however, certain considerations which are of concern to the court. The affidavit of the adoptive parents made pursuant to section 374 of the Social Services Law indicate a payment of $2,000 by them to Talbot-Perkins Childrens Services. There is no breakdown of expenses indicated, nor is the purpose of the payment indicated. Subdivision 6 of section 374 states "An authorized agency * * * may charge or accept a fee or other compensation to or from a person or persons with whom it has placed out a child, for the reasonable and necessary expenses of such placement”. [Emphasis added.]
In the course of a brief hearing, the court questioned the petitioners regarding this payment, and their response indicated they had no idea why the money was paid other than that it included a home study which cost $350. In addition to this first sum, they paid $650 when they picked up the child from the commissioner and the remaining $1,000 a short time thereafter. All moneys were paid to Talbot-Perkins. The attorney stated at the hearing, "Your Honor, there is a standard ten per cent of income.”
It should be noted that counsel fees for the adoption are in addition to the $2,000.
This type of assessment or fee is apparently a fairly common practice with a number of agencies. Such sums are patently not voluntary contributions and unless they cover specific, identifiable expenditures are not permissible.
The petitioners in this instance are educated, sophisticated professionals who were unable to have a child after 11 years of marriage. It would be expected that because of their eagerness to adopt they would be very vulnerable. In this instance it is indicated by their willingness to pay over a large sum without asking an accounting.
It is also evident to the court that a number of attorneys who appear on behalf of adoptive parents also represent the *211 agency. They often have retainer arrangements or handle specific types of proceedings for the agency.
The court is aware that the agencies are scrupulous about giving prospective parents a list of attorneys specializing in adoption work when a referral is requested, but frequently the list includes those lawyers also retained by the agency. The special expertise of these lawyers is important but there are more important considerations. While adoptions are generally not adversary in nature and there is rarely a conflict of interest, it would be a better practice and offer a greater degree of security to all parties, if the agencies refrained from referring attorneys they retain.
It is the intention of this court to sign this order of adoption. This is being done out of a conviction that it is in the best interest of the child to be adopted into this fine family.
However, in the future, in all instances where there has been payment by adoptive parents to an agency, this court will require that an affidavit be filed by the agency which will state:
1— that the adoptive parents have been advised that this payment is remuneration for specific services rendered, which services are to be particularized as to number of hours involved, etc.
2— a statement that there has been no undue pressure or influence on prospective adoptive parents to make a contribution to the agency, if this is their intention.
The Talbot-Perkins Services for Children is herewith directed to submit such a supplementary affidavit pursuant to section 374 of the Social Services Law within 30 days. If any portion of the $2,000 payment exceeds expenses incurred by Talbot-Perkins for this child, such sum is to be paid over to the Commissioner of Social Services in Suffolk County, as all payments for support of this child were made by the commissioner during the period the child was in foster care and until the transfer of custody to the adoptive parents on December 4, 1976.