OPINION OF THE COURT
Chief Judge Breitel.
Petitioners, having secured a Mexican order of adoption for a child now in their possession, bring this proceeding under CPLR article 78 to compel the State Commissioner of Health to issue their "adopted child” a new birth certificate. Special Term granted the relief, the Appellate Division unanimously affirmed, and the commissioner appeals by leave of this court.
The issue is whether section 4138 (subd 1, par [c]) of the Public Health Law entitles petitioners to compel issuance of a new birth certificate. Involved is whether the commissioner must act upon an order of a Mexican court relating to the adoption by a New York domiciled couple of a child born in New York to a New York domiciled mother.
 The order of the Appellate Division should be reversed, and the petition dismissed. Before issuing a new birth certificate the State Commissioner of Health is required by the statute to ascertain that the adoption order presented issued from a "court of competent jurisdiction”. The terms "competence” and "jurisdiction”, to be sure, may have as many meanings as there are contexts in which they are used (see Nuernberger v State of New York, 41 NY2d 111, 115; Lacks v Lacks, 41 NY2d 71, 74, mot for rearg den 41 NY2d 862). If the statutory words are to be given any function, however, they must exclude an adoption order of a foreign court from which, on its face, it appears that all of the parties concerned are domiciled, resident, and present in New York. The order of the Mexican court, despite its assertion of power and competence under Mexican statutes, established, therefore, that it lacked any foundation under Anglo-American concepts of jurisdiction to effect a change in the infant’s status.
Petitioners, a married couple domiciled in New York, sought to adopt an infant girl born in New York on November 22, 1973. The child’s natural mother, who allegedly consented to the adoption, is also a New York domiciliary. The natural father is unknown.
*91 The parties resorted to Mexico. Although the record is unclear whether the would-be adoptive parents were physically before the Mexican court, there is no dispute that neither the child nor her natural mother were in the jurisdiction. The natural mother did, however, purportedly appear by counsel. The ensuing Mexican court order of March 6, 1974 explicitly asserts the competence of the court and recites that petitioners, on whose behalf statements of four character witnesses were filed, are of age and adequate means. It directs that the child be adopted, and that her name be changed in accordance with petitioners’ request.
Mexican order in hand, petitioners turned to the State Commissioner of Health for a new birth certificate for the child. Their application was denied. In the commissioner’s view, under section 4138 (subd 1, par [c]) of the Public Health Law, the Mexican court’s lack of competence to order the infant’s adoption, apparent from the face of the order, precluded his compliance with their request. This proceeding followed.
None of the facts recited in the Mexican court order establish any basis for the exercise of power by the Mexican court. More important, no further facts were developed in this proceeding establishing any better basis for the Mexican court’s arrogation of power. Consequently, the extent of the State Commissioner’s authority to accept or reject the Mexican order turns on the recitals in that order and the meaning and purpose of the governing New York statute.
The statute sets forth the circumstances for issuance of a new birth certificate on behalf of an adopted child.
"1. A new certificate of birth shall be made whenever: * * *
"(b) notification is received by, or proper proof is submitted to, the commissioner from or by the clerk of a court of competent jurisdiction or the parents, or their attorneys, or the person himself, of a judgment, order or decree relating to parentage; or,
"(c) notification is received by, or proper proof is submitted to, the commissioner from or by the clerk as aforesaid of a judgment, order or decree relating to the adoption of such person” (Public Health Law, § 4138, subd 1, pars [b], [c]).
It is thus not all papers handed him that the commissioner must act upon; only when the papers disclose that a court of "competent jurisdiction” has ordered an adoption is issuance *92 of a new birth certificate required (cf. Matter of Dominick "C” v Ingraham, 31 AD2d 429, esp p 431 [opn per Wither, J.]).
 That issuance of a new birth certificate may be described, with less than complete accuracy, as a ministerial function does not, nor can it, avoid the principle that even ministerial responsibility depends upon the foundation presented by or with the proffered document (see Matter of Dominick ”C” v Ingraham, supra, p 431; 1943 Opns Atty Gen 260, 263). Even officials performing ministerial duties are commonly required to determine at least the facial significance of the documents upon which they are supposed to act. One accused of being insane, for instance, cannot be held upon an order of commitment which on its face establishes its ineffectiveness in law (see Warner v State of New York, 297 NY 395, 403). Nor would a clerk, otherwise authorized, be justified in issuing a marriage license when on the papers before him it is evident the would-be groom is still married to another. So, too, a new birth certificate should not be issued unless the judicial order of adoption at least on its face establishes that the order was that of a competent court (cf. Matter of Dominick "C” v Ingraham, supra, p 431; 1944 Opns Atty Gen 236, 238). The court must be "competent” not only under the law of its own sovereign, but also by virtue of personal and subject matter jurisdiction under the law of the forum in which the New York statute is being applied. (Ehrenzweig, Conflict of Laws, § 26, pp 85-88.)
On what renders a court competent to adjudicate an adoption there is a wise and diverse range of opinion (see Matter of E.W.C., 89 Mise 2d 64, 68-71; Requirements as to Reisdence or Domicil of Adoptee or Adoptive Parent for Purposes of Adoption, Ann., 33 ALR3d 176, § 2, subd [b], pp 182-184). Authorities start usually with the requirement of in personam jurisdiction over the adoptive parent and either the adoptive child or his legal custodian (see Restatement, Conflict of Laws 2d, § 78, subd b; Ehrenzweig, Conflict of Laws, § 26, pp 85-88; Taintor, Adoption in Conflict of Laws, 15 U of Pitt L Rev 222, 249-250). Moreover, at least in American jurisdictions, it is often regarded as critical—frequently, because adoption, it is reasoned, works a change in status—that the domicile of one or more of the parties be in the rendering jurisdiction (see Ehrenzweig, Conflict of Laws, § 26, pp 85-88).
In many instances the domicile of either the adoptive parent or the adoptive child will suffice (see Restatement, Conflict *93 of Laws 2d, § 78, subd a; Goodrich, Conflict of Laws [4th ed, Scoles, 1974], § 146). Another view is that a court is competent if the adoptive parents or child at least reside in the jurisdiction. It is not unusual in such contexts, however, to treat the term "residence” as "domicile”. (See Requirements as to Residence or Domicil, Ann., 33 ALR3d 176, § 12.) Some earlier authorities would even have required that the adoptive parents and child share a common domicile (see, e.g., 2 Beale, Conflict of Laws, § 142.2, pp 713-714).
What New York requires for its own courts to adjudicate an adoption is not, of course, determinative of the competence of an out-of-State court. The New York procedure does, however, reveal this State’s strong concern for, and therefore strong policy with respect to, the adoption of resident children and, in a proper case, children sojourning within its borders. The Domestic Relations Law contemplates the residence in New York of either the adoptive parents or the adoptive child (see §§ 113, 115, subd 2; Matter of Danielle, 88 Misc 2d 78). Also significant is that the adoptive parents and child must, unless excused by the court, appear before the Judge or Surrogate for an examination (see Domestic Relations Law, § 112, subds 1, 5; § 115, subds 3, 7). In addition, an independent investigation into the advisability of the adoption is to be conducted (see Domestic Relations Law, § 112, subd 7; § 116, subd 3). (See, also, 1977 Assembly Intro No. 5960; 1977 Senate Intro No. 3094, to prevent recognition in New York of out-of-State adoptions not conforming to established standards.)
Matter of Leask v Hoagland (197 NY 193, 195-196) and New York Life Ins. & Trust Co. v Viele (161 NY 11, 18), it is true, treated children of foreign adoptions "as though they had been duly adopted under the laws of New York” (Matter of Leask v Hoagland, supra, p 196). These cases, however, involved only the adopted child’s right to inherit under a will, and the rules there formulated are expressly limited to that purpose. In short, at issue were the consequences of the adoption, given the unquestioned status of adoption in the foreign State, not recognition of that status (see, generally, Ehrenzweig, Conflict of Laws, § 51, pp 186-188).
What foundation an out-of-State court must have, in all cases, to render it competent to order an adoption recognizable in New York need not now be determined. For purposes of this case and this statute, it is enough that on the submitted *94 documents the Mexican court was not "competent” to order the adoption of the infant child.
Although there was suggestion in this proceeding that the adoptive parents were physically before the Mexican court, the commissioner disputes this, and the Mexican judicial order does not recite that they were. In any event it has not been shown that they were ever residents or domiciliaries of Mexico. Neither the child nor her natural mother, moreover, was ever domiciled or resident in Mexico. Nor does it appear that they had ever sojourned in that jurisdiction. Insofar as any investigation into the advisability of the adoption, the order recites only that statements of four named but undescribed character witnesses were filed, and that petitioners are of age with adequate means of support.
The child’s status, situated in New York and not in Mexico, was no concern of the Mexican court. The Mexican order was a futile effort to produce an extraterritorial result not allowable with respect to an extraterritorial res. And all of this was patent from the face of the order. As all the authorities agree, however relaxed or strict in view, it is more than token formalistic submission to personal jurisdiction by the parents concerned, adoptive and natural, that gives a court power to fix an utterly foreign child’s status in a new family. In sum, New York need not under any authoritative view treat as "competent” this Mexican court purporting to order the adoption by a New York couple of a child born in New York to a New York mother.
 General principles governing recognition of foreign judgments are in harmony with this conclusion. Even assuming the competence of a given court, comity will not be accorded a foreign judgment if it violates a strong public policy of the State (see Martens v Martens, 284 NY 363, 365-366, mot for rearg den 285 NY 607; 8 NY Jur, Conflict of Laws, §§ 2, 4). Indeed, as observed earlier, the State’s vital social interest in the welfare of its children is one of its strongest public policies. To lend an imprimatur to an adoption, predicated upon insufficient jurisdictional foundations and a questionable perfunctory examination into the interests of the child, would be an inexcusable abdication of the State’s role as parens patriae. It could also, it is feared, open the door to the mercenary trading of children. Most troubling, the present record provides no information, except for undetailed references in a letter, how the infant child came into posses *95 sion of petitioners, a placement evidently without the intervention of any public or authorized private agency.
It follows, therefore, that the submitted order of adoption was insufficient on its face, and the commissioner’s refusal to issue a new birth certificate under section 4138 should be sustained.
It may be envisaged that it is awkward for the commissioner to determine an issue as potentially abstruse as the competence of a court. But the matter is not ended finally by the commissioner’s action. It is precisely in a judicial proceeding such as this, in the nature of mandamus to enforce a legal right, that the commissioner’s rejection may be overruled if, but only if, it appears that indeed the adoption order issued from a court of competent jurisdiction. This proceeding, as noted before, did not produce such proof. On the contrary, no more than the naked and inadequate "jurisdictional” facts recited in the Mexican order were produced.
One additional point should be addressed. Because the immediate concern is only the issuance of a new birth certificate, it is true that any decision regarding the Mexican order leaves the purported adoption itself unaffected for better or worse. It is not true, however, that the child is forever left with a New York birth certificate bearing an incomplete name. Petitioners’ recourse is a proper adoption proceeding in New York, a proceeding which one would hope would give them the opportunity to establish that the adoption is in the best interests of the child.
Perhaps the most unsettling aspect of this technically narrow proceeding, in which petitioners would studiously avoid any review of the best interests of the child, is that the child herself is unrepresented. At the very least, in this or any other proceeding affecting the child’s welfare, a guardian ad litem to participate on behalf of the child should be appointed (see Matter of Dominick "C” v Ingraham, 31 AD2d 429, 432, supra). The nisi prius court had that power to appoint and should have exercised it (CPLR 1202). The child is the ultimate principal in this proceeding, she is the ward of the court, and no one speaks on her behalf.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
*96 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.