OPINION OF THE COURT
Bertram R. Gelfand, J.
Petitioner has presented an application pursuant to Domestic Relations Law § 115-a to obtain a certificate of preadoption to facilitate the admission to this country for the purpose of adoption of an infant born in El Salvador on or about February 10, 1985. Such certificate is necessary in order to satisfy the requirements of Federal immigration law.
The basic issue presented by the application is whether the apparently well-motivated desire of petitioner to adopt this child, and the benefit which such adoption will likely confer on the child, can overcome the strong public policy of this State against sanctioning or facilitating the "sale” of children for adoption in what may became a marketing in human beings.
The documentation submitted in support of the application indicates that the process by which petitioner will obtain the *388 infant she hopes to adopt is that the infant will be transferred from El Salvador to an adoption agency allegedly licensed in the District of Columbia with offices in the State of Virginia. It appears that the business of the agency is to act as a "finder” or "middleman” in locating El Salvadorian children for individuals who are interested in adopting such children.
In the initial proceedings, it was indicated that the District of Columbia agency was to receive approximately $5,000 with reference to the transaction. Petitioner could offer no breakdown as to the purpose for which this sum was being paid. It was requested of petitioner and the attorney who first represented her that they submit to the court an itemization of the purposes of the $5,000 payment. Before any such submission, petitioner changed counsel. The same request was made of petitioner’s second counsel. Prior to any submission by him, he likewise was discharged by petitioner. Finally, petitioner, proceeding pro se, made a submission which indicated that her obligation to the agency was not approximately $5,000, but in excess of $11,000. The expenses enumerated by the agency include the payment of $3,000 to a "foreign lawyer”; $1,650 in "doctor/hospital fees”; $1,200 in "foster care”; a $2,500 "agency fee”; $1,551.50 "transportation expenses”; and various miscellaneous charges totaling $1,195. These fees do not include any charges for local counsel.
With reference to the $3,000 fee for foreign counsel, the papers are devoid of the required explanation of what services would be rendered for a fee whose size is much larger in relation to the Salvadorian economy than our own and what is the relationship of this counsel to the agency supplying the child (see, People v Michelman, 93 Misc 2d 297; People v Rosenstein, 92 Misc 2d 1069; Social Services Law § 374 [6]). Of even more significance is that the explanation of the services for which the agency is being paid $2,500 reflects that this is essentially a finder’s fee. Almost every other service that is rendered to the child through the agency is the subject of a separate charge.
The laws of this State are replete with strong expressions of the public policy which preclude the exchange of funds in the placement of a child for adoption beyond the amount necessary for reasonable expenses. The Legislature has clearly expressed this public policy by making a payment in excess of reasonable and necessary expenses in an adoption a misdemeanor for the first offense and a felony for the second offense (see, Social Services Law § 374 [6]; § 389 [2]).
*389 Social Services Law § 374 (6) limits the payments that may be made to an adoption agency to the "reasonable and necessary expenses” of the placement of the infant. Even assuming, arguendo, that the within agency qualifies, pursuant to the Interstate Compact on the Placement of Children (Social Services Law § 374-a), as an "authorized agency” under New York law, only those expenses deemed reasonable and necessary for the infant’s placement may be charged. The sums required must be for specific, identifiable and reasonable costs, or they may not be paid (Social Services Law §§ 371, 374; Matter of V., 91 Misc 2d 209).
Justice Lupiano writing for a unanimous Appellate Division, First Department, in Matter of Grand Jury Subpoenas (Morgenthau) (58 AD2d 1, 6) succinctly and explicitly expressed this public policy when he stated, "The purpose behind these sections of the Social Services Law is to prevent trafficking in babies, the buying and selling, in effect, of human beings. It is beyond cavil that the integrity of the adoptive process is paramount”. More recently, in Matter of Jose L. (126 Misc 2d 612), the Family Court, Queens County, declined to sign an order of preadoption to facilitate the entrance of a child from Chile where the payments to be made in connection with the receipt of the child totaled $10,000. In the instant case, we have the additional problem of a $2,500 payment to a domestic entity that appears to be nothing more than a middleman receiving a finder’s fee (see also, Matter of Anonymous, 46 Misc 2d 928).
The seriousness with which this State views the proper placement of children is further reflected in Barry E. v Ingraham (43 NY2d 87). In that case, a unanimous Court of Appeals, in reversing the Appellate Division, declined to give comity to a Mexican decree of adoption because the circumstances under which the child was made available in Mexico and the nature of the proceeding concluded in Mexico were far from clear, leaving open the specter of an improper trafficking in children that "could also, it is feared, open the door to the mercenary trading of children” (supra, at p 94).
On the information supplied to the court to date, the court is far from satisfied as to the total propriety of all of the payments being required of petitioner before the child in the instant matter is delivered to petitioner. A disturbing cloud hangs over the apparent finder’s fee of $2,500 being paid to the District of Columbia/Virginia agency and the $3,000 *390 payment to a foreign lawyer for unspecified legal services. The payments for more conventional services, likewise, appear excessive.
Nevertheless, this court does not conclude that the appropriate sanction is to deny the completion of what otherwise appears to be a proper union between petitioner and this child, or to leave their potential relationship in a continuing state of limbo while there is pursued what could be an extremely protracted investigation into the mechanics of the agency’s operation. Support for this course is discerned in dicta of the Court of Appeals enunciated as recently as November 14, 1985, in Matter of Sarah K. (66 NY2d 223). In quoting from the opinion of the trial court in that matter, Judge Kaye, writing for a unanimous court, seemed to express, in dicta, a view which coincides with the concept enunciated by my learned former colleague, Surrogate Bennett, in Matter of E. W. C. (89 Misc 2d 64). The E. W. C. matter is an adoption where a question existed as to the proprieties of the financial obligations of the petitioners arising from the placement of the child. The conclusion reached in that case was that the adoption should move forward independent of what action should be taken relative to improprieties in the placement. This course is consistent with the circumstance that what is here at issue is a child and not property. The subject of this proceeding cannot be placed in an escrow account while the legal issues which may flow from his placement torturously wend their way through the judicial process.
In the instant case petitioner sincerely views the particular child that is the subject of the application as one already having a kinship to her. To sever this relationship, at this point, because petitioner may have been victimized by the procedures of the placement agency and/or by those who control the child in a foreign country, would neither be in her best interests, nor the best interests of the innocent child.
Accordingly, the application for an order of preadoption is granted.
The result here reached should in no respect be interpreted as condoning the procedures under which petitioner’s relationship with this child arose. It must be further emphasized that the course embraced by the court is one that is only available where there is not otherwise any question about the appropriateness of the petitioner having custody of the child and *391 where it is likely that she will prove to be an appropriate adoptive parent. It is likewise an alternative which is available only where the petitioner appears to have entered into the transaction without knowingly, or overtly, embracing a course of conduct which she knew, ab initio, to be wrongful. Additionally, the granting of the instant application is without prejudice to any future action by petitioner or any agency of government to seek to recover such sums paid in connection with this placement as appear to be excessive. Similarly, it is without prejudice to the appropriate agencies of government in this or other jurisdictions seeking to regulate or restrain the procedures of the agency that is advertising the availability through it of children from overseas.
The chief clerk of this court is directed to forward a copy of this decision with the name and address of petitioner and the agency to the Attorney-General of the State of New York for such action, independent of the instant application, or an application for the adoption of the child, as he deems appropriate within the circumstances of the matter.