OPINION OF THE COURT
George B. Ceresia, Jr., S.
In this adoption proceeding, the petitioning adoptive parents (the H’s) are seeking court approval of certain fees and expenses paid by the petitioners to Adoption Action, and its sole proprietor/sole employee, Sheila Beam, Ed.D., as reasonable, necessary and authorized.
*874 After notification, pursuant to order of the court, to the adoptive parents, the attorney for the birth mother, the Attorney-General of the State of New York, the New York State Department of Social Services, and Sheila Beam/Adoption Action, a hearing on the issue was held before the court. (Matter of Male Infant B., 96 AD2d 1055.)
The New York State Department of Social Services argues that actions of Dr. Beam/Adoption Action are in contravention of section 374 (2) and (6), and section 371 (10) and (12) of the Social Services Law.
FACTS
Adoption Action, admittedly, is not an authorized adoption agency pursuant to Social Services Law § 371 (10).
Adoption Action’s services were publicized by various methods, including a "Dear Reverend” letter sent to over 300 area clergy listed in the telephone yellow pages, a similar letter sent to area physicians, a brochure and "Mission Statement” circulated by Sheila Beam, lectures given by Sheila Beam, and a telephone book yellow pages advertisement and listing. Each of the foregoing writings contained a disclaimer stating that Adoption Action is not a placement agency, except the yellow pages advertisement. That ad was listed along with authorized placement agencies’ ads and listings under the heading "Adoption Services”.
Adoption Action holds itself out as "consultation service for prospective parents and expectant/birth parents”. ("Dear Reverend” letter.) In addition to various counseling services, Adoption Action "operates an Exchange for clients where prospective adoptive parents may exchange information” and "acts as an intermediary”. ("Dear Reverend” letter.)
Further, Adoption Action states that it "is a unique consultation service dedicated to the concept of bridging the serious gaps that exist in the current adoption system” and has "no screening by age, religion, physical health, race, prior infant adoption or children in the family or marital status”. (Mission Statement.)
The H’s learned about Adoption Action after Mr. H had received a "Dear Reverend” letter. Initially, the H’s called Sheila Beam and asked her to contact an expectant teen they had heard about, to see if the teen would like to talk about allowing the H’s to adopt her baby. Dr. Beam did contact and talk to the teen, but the teen had already made arrangements *875 with another couple. No bill for Dr. Beam’s services was rendered or paid.
The H’s then came to Adoption Action for counseling, and ultimately after four mandatory counseling sessions, were listed on an “exchange” maintained by Adoption Action. The H’s were charged $50 per hour for Dr. Beam’s time spent with them and with the birth mother, plus $150 flat fee for listing on the “exchange”.
Sheila Beam, between June and December 1988, showed the H’s listing to two birth mothers. One apparently decided not to put her child up for adoption. The other birth mother (A) had been referred to Adoption Action by an organization called Resolve. A’s expected child had the probability of a genetic disease and, this apparently had caused difficulty for A in finding adoptive parents who would take the child. Dr. Beam contacted those persons on her “exchange”, and only the H’s were interested in adopting such a child. Dr. Beam then contacted A, brought her the H’s “exchange” resume, at which time A decided she would like to meet the H’s. At the meeting with A, Dr. Beam gave her counseling. Sheila Beam gave the H’s A’s telephone number, and the H’s arranged to and did meet A. At the meeting, the H’s and A agreed to the adoption of A’s expected child by the H’s. Both the H’s and A had independent contact with and received counseling from Dr. Beam, including an incident shortly before the baby’s birth when A became concerned about whether the H’s were still interested and were going to make certain medical payments.
After the birth of the adoptive baby, the H’s, following execution of hospital release forms by A and A’s attorney, took custody of the adoptive child directly from the hospital. The arrangements as to the taking of custody were made directly between the H’s and A, or through their respective attorneys. Adoption Action/Sheila Beam took no part in the arrangements.
The bill rendered by Adoption Action/Sheila Beam to the H’s and paid by them for counseling to them and to A, and for listing on the “exchange” was $711.78.
OPINION
There are three potential issues to be determined by the court. First, the court must determine if Adoption Action/ Sheila Beam was illegally “placing out” the adoptive child in *876 contravention of Social Services Law § 374 (2). Second, in the event the first question is answered in the negative, the court must determine whether there exists any other legal impediment to the payment of the requested fee to Adoption Action/ Sheila Beam. Finally, if that question is also answered in the negative, the court must determine if the fees of Adoption Action/Sheila Beam were reasonable and necessary.
Section 374 (2) of the Social Services Law states as follows: "2. No person, agency, association, corporation, institution, society or other organization except an authorized agency shall place out or board out any child but the provisions of this section shall not restrict or limit the right of a parent, legal guardian or relative within the second degree to place out or board out a child.”
Section 371 (12) defines "Place out” as follows: "12. 'Place out’ means to arrange for the free care of a child in a family other than that of the child’s parent, step-parent, grandparent, brother, sister, uncle, or aunt or legal guardian, for the purpose of adoption or for the purpose of providing care”.
To decide the issues in this case, the court must look at the totality of the circumstances. There is no single factual happening nor is there any one piece of evidence which can be pointed to as determinative of the issues. It is agreed by the parties, and the evidence substantiates that Dr. Beam’s actions were motivated by the highest of ideals. However, while the court in making its decision should consider the motives and intentions of Dr. Beam/Adoption Action, those motives and intentions, no matter how altruistic or humanitarian, are not by themselves determinative. (Matter of Jose L., 126 Misc 2d 612, 615.)
The evidence supports the conclusion that Dr. Beam not only held herself out as an intermediary but did in fact, act as an intermediary in assisting the adoptive parents and birth mother in the placement process. Indeed, Dr. Beam was an essential intermediary because but for the conduct of Dr. Beam/Adoption Action, the placement would not have come about.
The H’s came to, and A was referred to Adoption Action as a result of the circulation of Adoption Action literature and Dr. Beam’s lectures. Further, the meeting of the H’s and A was brought about by Dr. Beam.
It is well settled that intermediary placements are prohibited as violative of Social Services Law § 374 (2) and § 371 (12) *877 (Matter of Tersigni [Carballo], 137 Misc 2d 553; Matter of Unnamed Baby Boy, 110 AD2d 1019; Anonymous v Anonymous, 108 Misc 2d 1098).
This, however, is not a case of placement by the intermediary.
It is clear from the evidence that Dr. Beam/Adoption Action never arranged for the care of A’s child for any purpose. All such arrangements were made between A and the H’s and were carried out by them with the advice of their respective attorneys.
The actions of Dr. Beam/Adoption Action are akin to that of an independent search agency which brings about or locates, but does not "place out” as that term is defined in Social Services Law § 371 (12). At least one court in this State has promulgated rules prohibiting the use of independent search agencies in adoptions. (See, Matter of Calynn M. G., 137 Misc 2d 1005 [Sur Ct, Nassau County].) But such a rule has not been drafted into law by the Legislature.
As a result, this court concludes that the conduct of Dr. Beam/Adoption Action is not prohibited by section 374 (2) and section 371 (10) of the Social Services Law.
While such conduct is not prohibited by those sections of the law, Social Services Law § 374 (6) is controlling as to whether compensation can be paid to or received by Dr. Beam/Adoptive Action and as to whether such conduct is in any part prohibited.
Section 374 (6) reads as follows:
"6. An authorized agency, as defined in paragraphs (a) and (c) of subdivision ten of section three hundred seventy-one of this chapter, may charge or accept a fee or other compensation to or from a person or persons with whom it has placed out a child, for the reasonable and necessary expenses of such placement; and no agency, association, corporation, institution, society or organization, except such an authorized agency, and no person may or shall request, accept or receive any compensation or thing of value, directly or indirectly, in connection with the placing out or adoption of a child or for assisting a parent, relative or guardian of a child in arranging for the placement of the child for the purpose of adoption; and no person may or shall pay or give to any person or to any agency, association, corporation, institution, society or organization, except such an authorized agency, any compensation or thing of value in connection with the placing out or *878 adoption of a child or for assisting a parent, relative or guardian of a child in arranging for the placement of the child for the purpose of adoption. The prohibition set forth in this section applies to any adoptive placement activity involving a child born in New York state or brought into this state or involving a New York resident seeking to bring a child into New York state for the purpose of adoption.
"This subdivision shall not be construed to prevent the payment of salaries or other compensation by an authorized agency to the officers or employees thereof; nor shall it be construed to prevent the payment by a person with whom a child has been placed out of reasonable and actual medical fees or hospital charges for services rendered in connection with the birth of such child or of other necessary expenses incurred by the mother in connection with or as a result of her pregnancy or the birth of the child, or of reasonable and actual nursing, medical or hospital fees for the care of such child, if such payment is made to the physician, nurse or hospital who or which rendered the services or to the natural mother of the child, or to prevent the receipt of such payment of such physician, nurse, hospital or mother. Nor shall this subdivision be construed to prevent the payment by an adoptive parent, as defined in section one hundred nine of the domestic relations law, of reasonable and actual legal fees charged for consultation and legal advice, preparation of papers and representation and other legal services rendered in connection with an adoption proceeding or of necessary disbursements incurred for or in an adoption proceeding. No attorney or law firm shall serve as the attorney for, or provide any legal services to both the natural parents and adoptive parents. ” (Emphasis supplied.)
While the fees claimed by Dr. Beam/Adoption Action are purportedly for counseling, the proof shows that the counseling was an integral part of "assisting” the adoptive parents and birth mother "in arranging for the placement of the child for the purpose of adoption”. As such, the fees sought are not allowable under section 374 (6).
Moreover, under section 374 (6) there is a second, independent basis why such fees are not allowable and why Dr. Beam’s scope of counseling must be curtailed. It is apparent from the proof that Dr. Beam counseled both the birth mother and the adoptive parents in this private placement adoption. The interests of birth parents and adoptive parents are obviously quite different, and to attempt to counsel both sides is *879 fraught with the dangers of possible conflict of interest. This has already been recognized in section 374 (6)’s prohibition of attorneys counseling both sides. Attorney or not, the principle remains the same, and no counselor should attempt to advise both adoptive and natural parents in the same private placement adoption.
In accordance with the foregoing, the fees claimed by Dr. Beam/Adoption Action are not allowed. All payments made must be returned to the petitioners within 30 days.