The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, Arkansas 71611-8367
Dear Senator Bradford:
This is in response to your request, on behalf of a local international adoption agency, for an opinion on three questions concerning the adoption laws of Arkansas. Specifically, you note that the adoption agency in question is seeking registration or approval to perform services in the Russian Federation.[1] The Russian Ministry of Education is seeking an authoritative pronouncement on the following three questions regarding Arkansas law:
1. Does Arkansas recognize the Russian adoption decree?
 2. What is the status of the child when the family arrives with him or her?
 3. If the parents should decide not to parent the child after they arrive home, what would the procedures be for terminating the adoption?
RESPONSE
It is my opinion that the answer to your first question is "yes," assuming the Russian decree was entered with due process of law. In response to your second question, the "status" of the child, assuming the Russian decree was effected with due process, is that of a validly adopted child. A valid inter-country adoption creates the same parent and child relationship as if the adopted child were a blood descendant. For any further proceedings over which an Arkansas court has jurisdiction, the adoption will be treated as though an Arkansas court entered the decree. In response to your third question, there is no procedure for "terminating" the Russian adoption. The parents, however, may seek to have the child placed for private re-adoption or may seek the services of the State in placing the child. In either case, the heath, safety, welfare and best interests of the child will be the paramount concern of the judicial officer in charge of the proceeding.
Question 1 — Does Arkansas recognize the Russian adoption decree?
The answer to this question is generally "yes." Section 9-9-218 of the Arkansas Code Annotated provides as follows:
 A decree of court terminating the relationship of parent and child or establishing the relationship by adoption issued pursuant to due process of law by a court of any other jurisdiction within or without the United States shall be recognized in this state. The rights and obligations of the parties as to matters within the jurisdiction of this state shall be determined as though the decree were issued by a court of this state.
The one requirement for recognition of an inter-country adoption decree is that it be issued "pursuant to due process of law." The concept of "due process of law" includes the necessity of lawful jurisdiction of the foreign court, notice to affected parties, and an opportunity to be heard. Cf. generally, Barry E. v. Ingraham, 43 N.Y.2d 87,400 N.Y.S.2d 772, 371 N.E.2d 492 (1977); and Zanzonico v. Neeld,17 N.J. 490, 111 A.2d 772 (1955). Assuming these minimal requirements are met, Arkansas law requires recognition of the foreign adoption decree.
Question 2 — What is the status of the child when the family arrives withhim or her?
If the Russian adoption was effected with due process, the status of the child when he or she arrives in the United States is that of a validly adopted child.[2] The effect of Arkansas adoption decrees and foreign decrees (as to matters within the jurisdiction of Arkansas courts) is outlined at A.C.A. § 9-9-215(a)(1) and (2), which provide in relevant part as follows:
9-9-215. Effect of decree of adoption.
 (a) A final decree of adoption and an interlocutory decree of adoption which has become final, whether issued by a court of this state or of any other place, have the following effect as to matters within the jurisdiction or before a court of this state:
 (1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the natural parents of the adopted individual of all parental rights and responsibilities, and to terminate all legal relationships between the adopted individual and his natural relatives, including his natural parents, so that the adopted individual thereafter is a stranger to his former relatives for all purposes.
* * *
 (2) To create the relationship of parent and child between petitioner and the adopted individual, as if the adopted individual were a legitimate blood descendant of the petitioner, for all purposes including inheritance and applicability of statutes, documents, and instruments, whether executed before or after the adoption is decreed, which do not expressly exclude an adopted individual from their operation or effect.
This provision creates a parent-child relationship between a child adopted in a foreign country (as long as effected with due process) and his or her adoptive parents. The relationship is that of a "legitimate blood descendant."
Question 3 — If the parents should decide not to parent the child afterthey arrive home, what would the procedures be for terminating theadoption?
In my opinion there are no procedures, as such, for "terminating" the Russian adoption. As noted above, the relationship of the parent and child created by a valid foreign adoption is that of legitimate blood descendant. The procedures for the adoptive parents to relinquish parental rights are exactly the same as would be employed for natural Arkansas parents to relinquish such rights. The parents may, privately, or with the help of an adoption agency, seek other adoptive parents for the child, but all the procedures and safeguards of an Arkansas adoption proceeding will attach. See A.C.A. § 9-9-210 to -216.
If the child is neglected or abused by the adoptive parents, or the parents abandon the child, the state is empowered to take action to safeguard the welfare of the child. See A.C.A. §§ 9-27-332 to -335 (Supp. 1999). The state may seek a judicial order to allow the adoptive parents to retain custody of the child, but to have the court order services to help the family stay in tact, or require the parents to undergo parental responsibility training. A.C.A. § 9-27-332 (Supp. 1999). The state may also, however, petition the court to have custody of the child transferred to the state, or to a relative or another individual. A.C.A. § 9-27-334 (Supp. 1999). Custody may only be transferred to a relative or other individual, however, if an appropriate investigation has been made of the home by the state and such placement would be in the best interests of the child. A.C.A. § 9-27-333 and A.C.A. § 9-27-335(a) (Supp. 1999). One of the fundamental principles of the Arkansas Juvenile Code, however, is to "assure, in all cases in which a juvenile must be permanently removed from the custody of his parents, that the juvenile be placed in an approved family home and be made a member of the family by adoption." A.C.A. § 9-27-302 (2)(D) (Supp. 1999).
In any case, the fact that the adoptive parents no longer wish to parent the child will not be the controlling consideration. The welfare and best interests of the child will be of paramount importance to the court. A.C.A. § 9-9-214.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] "On March 29 (2000), Prime Minister Putin signed long-pending regulations on foreign adoptions that, among other things, establish how foreign adoption agencies are to be accredited by the Russian government. The regulations, which took effect on April 20, are based on amendments to Russia's family code that were passed by the former Duma and signed by then-president Yeltsin in 1998." Letter from James F. Collins, American Ambassador in Moscow to the Joint Council on International Children's Services (available atwww.jcics.org/russia.html).
[2] Although I am by no means an expert on Russian law, there is some suggestion in legal commentary in this country that Russian law applies the law of the adopter's home state. See e.g., Kimberly A. Chadwick, "ThePolitics and Economics of Intercountry Adoption in Eastern Europe, 5 J. Int'l Legal Stud. 113 (1999); and H. Wayne Elliott, "InternationalAdoptions: Step by Step," 6 April, South Carolina Lawyer 37 (March/April 1995).