BERTHA ZANZONICO, ADMINISTRATRIX OF THE ESTATE OF JAMES ZANZONICO, DECEASED, APPELLANT, v. AARON K. NEELD, DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, RESPONDENT.

IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF JAMES ZANZONICO, DECEASED.

Argued January 24, 1955—Decided February 21, 1955.

Mr. *Rocco F. Senna* argued the cause for appellant (*Mr. William S. Cantalupo,* attorney).

Mr. *William A. Moore,* Deputy Attorney-General, argued the cause for respondent (*Mr. Grover C. Richman, Jr.,* attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

WACHENFELD, J.   This appeal from an assessment of a transfer inheritance tax imposed by the Transfer Inheritance Tax Bureau was certified here on our own motion prior to argument in the Appellate Division.   The facts, not being disputed, are stipulated.

In February 1950 James Zanzonico and his wife, Bertha, made an application to the Court of Appeal of Potenza, Italy, for the adoption of James' four-year-old orphaned niece, Maria Zanzonico, who was then residing in the town of Moliterno (Potenza), Italy.   James and Bertha at the time resided in the City of Newark, had been married for 20 years and were childless.   It was necessary to institute the proceedings in Italy rather than New Jersey as it would not have been possible to bring the child here because of the United

States immigration laws requiring a foreign child to be first adopted before being admitted to this country.

The adoption proceedings were instituted by a lawyer in. Italy who was given a power of attorney for that purpose. In connection therewith, James and Bertha filed various moving papers with the Court of Appeal in Potenza in satisfaction of the requirements of the law of Italy regulating the cause. Among the documents filed were certificates as to the character of the petitioners and affidavits as to their ability to provide for the child's welfare.

On February 8, 1951, a decree was duly entered by the Court of Appeal of Potenza approving and granting the adoption of Maria. It is conceded this court had jurisdiction and that the decree rendered was good and valid in Italy and fully recognized by its courts.

In October 1951 Bertha journeyed to Italy and, upon application to the American Consul there, the United States Department of Immigration and Naturalization, taking cognizance of the Italian adoption decree, granted permission to bring Maria to America. Upon their arrival in America in December 1951, Maria took up residence with James and Bertha in their home in Newark, where she lived as their natural child, receiving the love, care and devotion customarily bestowed upon a child. James died on March 23, 1954 and since his death Maria has continued to reside with Bertha at the same address.

James having died intestate, Bertha became the duly qualified administratrix of her deceased husband's estate. In this capacity, she executed and filed a report and appraisal of the estate with the Transfer Inheritance Tax Bureau, listing the beneficiaries of the estate herself, as wife of the decedent, entitled to dower in the real estate and one-third of the personalty, and Maria, the adopted daughter of the deceased, entitled to the real estate, subject to the dower rights of Bertha, and two-thirds of the personalty.

An examiner of the bureau, upon reviewing the facts recited above, determined Maria was not entitled to any

share in the estate of James and issued a tax assessment against the estate in the amount of $328.63. From the levy so made the present appeal is taken.

■ Since the act of 1902, the statute law of our State governing the adoption of children has specifically accorded such children the right of inheritance from their adoptive parents. *N. J. S. A.* 9:3–9. The dedicated purpose of the statute is to clothe the adopted child with all the rights of a natural child in regard to the descent and distribution of property under our law. *In re Book's Will*, 90 *N. J. Eq.* 549 (*E. & A.* 1919). The statute embodies the fundamental public policy of this State with respect to the status and welfare of adopted children.

Admittedly, the claim made on behalf of Maria to a share in James' estate is, quantitatively, the share to which she would be lawfully entitled as a natural child of the deceased. See *N. J. S.* 3A:4–2. The bureau, however, rejected the claim, based upon a finding that Maria had not resided with her adoptive parents prior to the granting of the foreign adoption decree. The bureau therefore determined, and urges here, that the Italian court's decree cannot be sustained in this State since our law requires a child to live continuously in the home of the prospective parents for not less than one year prior to the hearing of a petition for adoption, *N. J. S. A.* 9:3–5, a requirement not found in the Italian law.

This conclusion was motivated by our decision in *Guarantee Bank & Trust Co. v. Gillies*, 8 *N. J.* 88 (1951), as the examiner for the bureau cited it in his findings of fact. There we held that an adoption decree granted by a court at Corinth, Greece, under circumstances more fully stated hereafter, would not be recognized in allowing the adopted child to inherit property of a New Jersey decedent.

Prior to any legislation on the subject, it was firmly established in our decisional law that adoption decrees entered in foreign jurisdictions would be upheld here as to the descent and distribution of New Jersey property under our laws. *In re Finkenzeller's Estate*, 105 *N. J. Eq.* 44 (*Prerog.* 1929),

affirmed 107 *N. J. Eq.* 180 (*E. & A.* 1930); *Greaves v. Fogel,* 12 *N. J. Super.* 5 (*App. Div.* 1951). Our course in this respect was fully in accord with the prevailing view among American jurisdictions. See *Greaves v. Fogel, supra,* at *page* 9; *Restatement of the Law, Conflict of Laws,* § 143; 1 *Am. Jur., Adoption of Children,* § 67.

■■ No question of full faith is involved so far as the adoption decrees of sister states are concerned, but we can, consistent with our federal constitutional obligations under the Full Faith and Credit Clause, refuse to recognize foreign adoption decrees for inheritance purposes as the laws of New Jersey alone control the descent and distribution of the property of its decedents. *Hood v. McGehee,* 237 *U. S.* 611, 35 *S. Ct.* 718, 59 *L. Ed.* 1144 (1915). However, we have rejected the provincial approach and, in accord with traditional concepts of comity and in the exercise of due regard for the welfare of the adopted child, have accorded recognition to foreign adoption decrees for inheritance purposes, subject only to two conditions which pertain generally to the recognition of any foreign judgment: (1) that the foreign court had jurisdiction to fix the status of the child with respect to the adoptive parents, and (2) that the recognition of the foreign decree will not offend the public policy of our own State. *In re Finkenzeller's Estate, supra,* at *page* 46.

■ The judgments and decrees of foreign nations are recognized and enforceable here on like principles. *Caruso v. Caruso,* 106 *N. J. Eq.* 130, 138–9 (*E. & A.* 1929); *Romanchick v. Howard Savings Institution,* 118 *N. J. L.* 606, 608 (*E. & A.* 1937); *Ritchie v. McMullen,* 159 *U. S.* 235, 16 *S. Ct.* 171, 40 *L. Ed.* 133 (1895); *Ingenohl v. Walter E. Olsen & Co., Inc.,* 273 *U. S.* 541, 47 *S. Ct.* 451, 71 *L. Ed.* 762 (1927); see 50 *C. J. S., Judgments,* § 904.

It is conceded here that the Court of Appeal of Potenza had jurisdiction to grant the decree of adoption. The bureau, in challenging the decree, relies solely on the ground that it violates the public policy of our adoption laws. The bureau interprets our decision in the *Gillies* case, *supra,* to hold that

the public policy of New Jersey, as expressed in *N. J. S. A.* 9:3–5, precludes us from recognizing a foreign adoption decree where the one-year prior residence requirement imposed by our adoption law is not complied with. An examination of the facts and our opinion in the *Gillies* case will suffice to show that that case is not authority for the proposition urged by the bureau.

In the *Gillies* case, a child who claimed to have been adopted by New Jersey residents under a decree entered at a court in Corinth, Greece, sought to invalidate a will of his deceased adoptive father which left the estate to the widow. There was substantial evidence that the deceased never had any intention to adopt the child but only to assist his immigration into the United States. Although we expressed grave doubts as to the jurisdiction of the court at Corinth to render a decree of adoption, our decision turned primarily upon the ground that the adopted child had never seen or resided with his adoptive parents either before or after the issuance of the decree but remained at all times in Greece. We noted the one-year prior residence requirement of *N. J. S. A.* 9:3–5 and said that implicit within the statute:

"* * * is a public policy grounded in the protection of our institution of family life both for parents and for child, namely, that the considerable and solemn rights and obligations which follow upon adoption shall not be given or imposed without such a forecast of the personal contacts and impacts of parent and child as is to be had by a preliminary period of intimate living." (at *page* 100)

It was further observed that:

"The advantages which our statutes give to an adopted child and which Nicholas seeks to obtain are correlative with the clear, solemn and purposeful assumption of the mutual relationship of parent and child preceded by such foreknowledge of personal attributes and reactions as come only by daily living under normal conditions in the same household." (at *page* 101)

Accordingly, we held the foreign adoption decree in that case should not be recognized. However, this conclusion

did not impose any rigid rule governing generally the recognition of foreign adoption decrees, as we expressly limited our holding to the facts of that case, stating, at *pages* 101–2:

"* * * our public policy would be violated *by recognizing and giving effect to the adoption proceedings in the court at Corinth* * * *."  (Emphasis supplied)

We think the case at hand differs materially from the facts before us in *Gillies*.  Not only is the troublesome question of jurisdiction absent, but the facts admit a genuine child-parent relationship existing between Maria and her adoptive parents.  True, Maria did not reside with James and Bertha prior to the adoption decree, but she did live with them for 2½ years thereafter and prior to James' death.  During this period she was treated as a natural offspring and, indeed, Bertha, who would otherwise be entitled to the whole of James' estate, vigorously supports Maria's claim.

No better practical gauge could be employed to demonstrate the devotional respect and tender maternal concern for her offspring.  In fact, it typifies the very basic relationship that the statutory enactment endeavored to secure as the ultimate safeguard for the protection of both parent and child implicit in the one-year prior residence requirement of our adoption laws.

The abundant proof of this relationship here is what we found wholly lacking in the *Gillies* case.  The circumstances presented are such that we cannot judicially reason that the public policy of our State or the spirit of the legislative mandates would be offended by the recognition of the decree of the Italian court.

To accept the bureau's interpretation of the public policy of our adoption laws would, in practical effect, prevent children adopted under the laws of other jurisdictions which do not require the one-year prior residency from inheriting property in this State.  Such a result would be incompatible with what we think the Legislature had in mind with respect to the welfare of adopted children.  Where a genuine family

relationship has existed between the adopted child and its parents, we are not aware of any underlying reason in our laws which requires us to deny effect to foreign decrees simply because the law of the state of adoption imposes different requirements than we do. As Judge Cardozo said in *Loucks v. Standard Oil Co.*, 224 *N. Y.* 99, 120 *N. E.* 198, 201 (*Ct. App.* 1918):

> "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary."

Moreover, a recent expression on this subject by our Legislature confirms this conclusion. *Chapter* 234 of the Laws of 1952, *N. J. S. A.* 9 :3–15, provides that the entry of a judgment or decree of adoption in any state, territory or possession of the United States shall have the same force and effect as though such judgment or decree of adoption had been rendered and entered in this State. This statute was enacted following our decision in the *Gillies* case and certainly the Legislature knew then, as indicated by the purpose of the act itself, that the adoption laws of other states of the United States contain requirements which differ materially from ours and that some states do not require a one-year residency period prior to adoption. See *Purdon's Pa. Stat. Ann., Tit.* 1, § 4 (no period of prior residency required where child related by blood to adopting parent); *N. Y. Domestic Relations Law, McKinney's Consol. Laws, c.* 14, § 112(7) (prior residence period of six months can be waived in discretion of court); *Ill. Stat. Ann., c.* 4, § 3–2 (same).

Nevertheless, our Legislature declared that the adoption decrees of our sister states shall have the same force and effect as our own. While the statute deals only with the adoption decrees of sister states, its inference is persuasive that our public policy does not preclude us from recognizing foreign adoption decrees entered under laws differing from our own.

The foreign decree, under the facts presented, must be given effect. The assessment of transfer inheritance taxes upon the transfer of the assets of the estate of James Zanzonico is set aside.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.