**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3452-22

IN THE MATTER OF THE
ESTATE OF R.S.,[1] deceased

_____

Argued October 8, 2024 – Decided October 31, 2024

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. 277696.

Ryan Patrick Campi argued the cause for appellant M.S. (Graziano & Campi, LLC, attorneys; Kathleen McCormick Campi and Ryan Patrick Campi, of counsel and on the briefs).

Mark D. Miller argued the cause for respondent D.S. (Dubeck & Miller, attorneys; Mark D. Miller, of counsel and on the brief).

PER CURIAM

---

[1] We use initials in this matter to protect confidentiality and privacy of the parties. R. 1:38-3(d)(10), (11) and (16).

In this probate matter, defendant M.S. appeals from a July 13, 2023 order appointing plaintiff D.S. as administrator of the Estate of R.S., defendant's adoptive father (decedent). After careful review of the record and applicable law, we reverse and remand.

I.

Defendant was born in 1993 in Moscow, Russia. In 1994, he was adopted in Russia by decedent and his former spouse L.G. At the time of the adoption, both parents lived in New Jersey. Before the adoption in Russia was finalized, an adoption home study was completed by Better Living Services, an adoption agency approved to place children for adoption within New Jersey. The agency recommended decedent and L.G. as qualified adoptive parents.

On September 30, 1994, after defendant had been adopted in Russia, he became a United States citizen. A certification of citizenship was issued by the United States government, signed by the U.S. Commissioner of Immigration and Naturalization granting defendant citizenship pursuant to "Section 341 of the Immigration and Nationality Act."[2] This certificate was signed by decedent as "father." Under the Act, a person derives citizenship "through the naturalization of a parent . . ." 8 U.S.C. § 1452(a).

_____

[2] See 8 U.S.C. § 1452.

A-3452-22

Plaintiff is the decedent's brother, and their parents were K.S. and G.S. Decedent died on February 17, 2021, and his mother, K.S. had passed away approximately a year before. At the time of decedent's death, his mother's estate had not been settled. In her will, K.S. left a portion of her estate to decedent. Plaintiff was named executor of K.S.'s estate.

Defendant had been estranged from his father, the decedent, for many years due to a history of sexual abuse. After an investigation into the sexual abuse allegations, decedent was arrested and charged with sexual assault. In 2011, decedent was sentenced to ten years imprisonment. That same year, decedent and L.G. divorced. Neither decedent nor L.G.'s parental rights to defendant were ever terminated.

After decedent's death in February 2021, defendant's counsel advised plaintiff that defendant would become the administrator of decedent's estate. Plaintiff requested a copy of defendant's adoption paperwork from Russia to confirm that decedent was defendant's adoptive father. Defendant's counsel provided plaintiff with defendant's certificate of citizenship, which was signed by decedent as his father.

Plaintiff, who resided out of state, retained local counsel and requested further documentation of decedent's adoption of defendant, specifically, the

A-3452-22

judgment of adoption. Defendant's counsel provided a copy of the Russian certification of adoption translated to English. There were no adoption proceedings in New Jersey and no judgment of adoption from a court in the United States.

Not satisfied with the adoption documentation provided, plaintiff filed a verified complaint on November 2, 2022, seeking to be declared as decedent's sole intestate heir and appointed as administrator of decedent's estate. Defendant filed an answer and counterclaim asserting he was the legal heir as decedent's adopted son, and provided the certificate of citizenship, certificate of Russian adoption, and the post-adoption Russian birth certificate with English translation.

As discovery progressed, defendant provided additional documentation to plaintiff such as: (1) defendant's Russian passport; (2) defendant's IR-3 visa[3];

---

[3] IR-3 visas, along with IR-2, IH-3, IR-4, and IH-4 visas, are "immigrant visas adopted children may receive." In re Adoption of D.G.J., 277 A.3d 1204, 1210, n.12 (2022) (citing https://www.uscis.gov/adoption/bringing-your-internationally-adopted-child-to-the-united-states/your-new-childs-immigrant-visa/your-new-childs-immigrant-visa). See generally Telegram from U.S. Sec'y of State to All Diplomatic and Consular Posts (June 16, 2001), reprinted in State Dept. Reminds Posts About Classification of Orphans Under Child Citizenship Act, 78 Interpreter Releases 1077 (2001) ("The IR-3 visa classification signifies that the orphan has been adopted abroad prior to the issuance of the immigrant visa. In order to issue an IR-3 visa, the adjudicating

(3) home study completed by the adoption agency; (4) letters of employment for decedent and the adoptive mother L.G. at the time of adoption; (5) criminal background checks for decedent and the adoptive mother; and (6) documentation of termination of birth mother's parental rights.

On June 2, 2023, the court conducted a telephonic conference to address plaintiff's request to take depositions "to find out what exactly happened in – Russia in 1993 . . . . " The parties disputed whether there was sufficient proof that defendant was decedent's legal child for inheritance purposes. Plaintiff argued that the controlling statute, N.J.S.A. 9:3-43.2, went into effect in 2005, and had no retroactive applicability to this case. Defendant argued that there was no evidence to suggest that he was illegally or inappropriately adopted, especially since he had been granted U.S. citizenship based upon the adoption. The court reserved its decision on the validity of defendant's adoption.

On July 13, 2023, the court concluded that N.J.S.A. 9:3-43.2 did not apply retroactively to this case. The court further found it did not have sufficient information about defendant's adoption in Russia to confirm that defendant was

---

officer must be satisfied that the adoption was both legal in the country where it occurred and valid for U.S. immigration purposes.").

legally adopted by decedent. As such, plaintiff was appointed as the administrator of decedent's estate. This appeal followed.

II.

We review issues of law de novo and "owe no deference to an interpretation of law by the trial court[.]" R.K. v. F.K., 437 N.J. Super. 58, 61 (App. Div. 2014) (quoting M.S. v. Millburn Police Dept., 197 N.J. 236, 246 n.10 (2008)). A trial court's findings of fact, however, are binding on appeal when supported by "adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co. of America, 65 N.J. 474, 484 (1974). "Because there is no genuine issue of material fact on this record," we review de novo the court's determination that N.J.S.A. 9:3-43.2 does not apply retroactively as well as the court's conclusion that there was insufficient basis to conclude that M.S. was legally adopted. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

Defendant contends that the court erred in finding that he had not established that he was legally adopted by decedent. Specifically, he asserts that N.J.S.A. 9:3-43.2 was in effect at the time the court rendered its decision in this matter and is therefore applicable to this case. Defendant further asserts the

court erred in concluding that there was insufficient information regarding his adoption in Russia.

A.

In 2005, N.J.S.A. 9:3-43.2 was enacted clarifying the enforceability of a final judgment of adoption of a foreign jurisdiction in New Jersey:

> A final judgment of adoption granted by a judicial, administrative or executive body of a jurisdiction or country other than the United States shall have the same force and effect in this State as that given to a judgment of adoption entered by another state, without additional proceedings or documentation if:
>
> (a) the adopting parent is a resident of this State; and
>
> (b) the validity of the foreign adoption has been verified by the granting of an IR-3 immigrant visa, or a successor immigrant visa, for the child by the United States Citizenship and Immigration Services.

The intent of the Legislature in enacting this statute was to clarify New Jersey law regarding foreign adoptions and simplify the process for recognizing adoptions occurring in foreign countries. Press Release, Off. of the Governor, Codey Signs Bill Recognizing Foreign Adoptions, at 1 (April 29, 2005) (on file with N.J. State Law Library). With the enactment of N.J.S.A. 9:3-43.2, "[f]amilies will no longer have to go through a process of re-adopting their

children who are already recognized by the federal government as U.S. citizens." Ibid.

The statute is silent as to its retroactive application. We recognize the "general principle of statutory construction that courts favor the prospective application of statutes." Phillips v. Curiale, 128 N.J. 608, 615 (1992) (citing Twiss v. State, 124 N.J. 461, 466 (1991)). However, "a court is to apply the law in effect at the time it renders its decision." Id. at 616 (citing Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711 (1974)). There are two exceptions to this general legal principle: "when doing so 'would result in manifest injustice or there is a statutory direction or legislative history to the contrary.'" Ibid.

Neither of these exceptions apply here. Bradley, 416 U.S. at 711. First, given our long-standing history of recognizing foreign adoption judgments for inheritance purposes, there would be no manifest injustice to applying the current law to this case. Second, there is no "statutory direction or legislative history to the contrary." Ibid.

Long before the Legislature enacted N.J.S.A. 9:3-43.2, our Supreme Court recognized New Jersey's public policy favoring the recognition of foreign adoption decrees even "under laws differing from our own" as to descent and distribution of property. Zanzonico v. Neeld, 17 N.J. 490, 498 (1955). The

Supreme Court reasoned that it has been "firmly established" in New Jersey's "decisional law that adoption decrees entered in foreign jurisdictions would be upheld" for purposes of inheritance. Id. at 494 (citing In re Finkenzeller's Estate, 105 N.J. Eq. 44 (Prerog. 1929), aff'd 107 N.J. Eq. 180 (E.&A. 1930)). It is also well-established in New Jersey that adopted children have the right of inheritance from their adoptive parents. Ibid. (citing N.J.S.A. 9:3-9). Thus, in 1955, the Court held that,

> in accord with traditional concepts of comity and in the exercise of due regard for the welfare of the adopted child, [we] have accorded recognition to foreign adoption decrees for inheritance purposes, subject only to two conditions which pertain generally to the recognition of any foreign judgment: (1) that the foreign court had jurisdiction to fix the status of the child with respect to the adoptive parents, and (2) that the recognition of the foreign decree will not offend the public policy of our own State.
>
> [Id. at 495 (citing In re Finkenzeller's Estate, 105 N.J. Eq. at 46).]

Here, both requirements under the holding of Zanzonico have been satisfied. The Russian court had jurisdiction to "fix the status" of defendant who was born in Russia and was residing there at the time of the adoption petition. According to Russian documents, after defendant's birth, the birth mother abandoned him, and he was placed at a Russian orphanage. Russian authorities

9

notified the birth mother on July 15, 1993, and October 11, 1993, of her right to visit the child at the orphanage. Following these notices, the birth mother's parental rights to defendant were terminated as of November 9, 1993. There is no indication in any of the Russian documents that defendant's birth mother named his birth father.

The Order of the Government of Moscow dated April 1, 1994 permitted defendant's adoption by decedent and L.G. The post-adoption Russian birth certificate identified decedent as defendant's father. These Russian documents clearly establish that Russia had jurisdiction to address defendant's legal relationship with his birth parent and subsequent adoption by decedent and L.G.

Further, plaintiff points to no public policy that would be contravened by recognizing the Russian adoption. To the contrary, failing to recognize and give effect to the Russian adoption, which occurred over thirty years ago and has been validated by the granting of an IR-3 visa and United States citizenship, would offend the public policy of New Jersey which gives full faith and credit to such foreign adoption decrees under these circumstances. U.S. Const. art. IV, § 1. "There is no public policy in New Jersey against such legitimation[] or acknowledgment[]" of this adoption decree. In re Estate of Spano, 49 N.J. 263, 269 (1967).

10

Our analysis turns next to applying the requirements set forth in N.J.S.A. 9:3-43.2 to the facts of this case, and whether there is sufficient evidence to recognize the adoption judgment of Russia. Without specifying, the court found that it did not have sufficient information regarding the adoption that took place in Russia to validate the adoption decree. Based upon our review of the record, we are satisfied that there is substantial, credible evidence to support the recognition of the Russian adoption decree.

In determining whether to give a foreign judgment full force and effect in New Jersey, N.J.S.A. 9:3-43.2 requires only that (a) the adopting parent is a resident of New Jersey; and (b) the foreign adoption has been verified by the granting of an IR-3 immigrant visa, or a successor immigrant visa, for the child by the United States Citizenship and Immigration Services.

Contrary to plaintiff's assertions, there is no requirement that the court be provided with a description of the events that occurred in Russia at the time of the adoption. Plaintiff argues that the court did not have any description of the events that occurred in Russia, and that L.G. testified during her deposition that she and her former spouse took "bribes" or gifts to Russia to facilitate the process. Specifically, she explained they were told to bring five hundred dollars' worth of electronics and cosmetics, and they also brought pediatric medicine.

11

L.G. further explained that she and her former spouse followed the instructions of the adoption agency and complied with all requirements in processing defendant's adoption. The Russian government approved the adoption and subsequently, the United States recognized the adoption by granting defendant U.S. citizenship.

Applying the statutory requirements to this case, there is no dispute that the adoptive parents, decedent and L.G., were residents of New Jersey in 1994 when the Russian adoption judgment was issued. Defendant, as a child, was granted an IR-3 immigrant visa, which was attached to his Russian passport, and he was granted United States citizenship based upon the foreign adoption.

Next, under N.J.S.A. 9:3-43.2, "the validity of the foreign adoption [is] verified by the granting of an IR-3 immigrant visa . . . ." The only document required by the statute to verify the foreign adoption is the IR-3 visa, which defendant obtained and provided a copy to the court and counsel. There has been no challenge to the IR-3 visa, defendant's citizenship, or the adoption over the past thirty years. Only now does plaintiff challenge the admissibility and authenticity of defendant's IR-3 visa because it does not have an apostille[4] and

---

[4] An apostille is special seal signifying proof of a document's genuineness. See N.J.R.E. 902(c).

contends it is not self-authenticating pursuant to N.J.R.E. 902. These arguments are without merit.

B.

N.J.R.E 901 addresses the requirement of authentication or identification of an item as a "precedent to admissibility." State v. Hannah, 448 N.J. Super. 78, 89 (App. Div. 2016). N.J.R.E. 901 provides,

> To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims.

Authentication only requires "'a prima facie showing of authenticity[.]'" Hannah, 448 N.J. Super. at 89 (citing State v. Tormasi, 443 N.J. Super. 146, 155 (App. Div. 2015)).

N.J.R.E. 902 identifies "items of evidence [that] are self-authenticating and . . . require no extrinsic evidence of authenticity in order to be admitted[.]" N.J.R.E. 902(b) identifies domestic public documents that qualify as self-authenticating:

> A document (1) bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or possession thereof, or of a political subdivision, department, office, or agency thereof, and a signature purporting to be an attestation or execution, or (2) purporting to bear a signature affixed in an official capacity by an officer or employee

of such an entity, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer had the official capacity and that the signature is genuine.

[N.J.R.E. 902(b).]

To qualify as a self-authenticating document, the IR-3 visa must bear a seal of the United States and a signature purporting to be an attestation or execution, or alternatively, a signature affixed in an official capacity. After reviewing the IR-3 visa, the court did not address whether the IR-3 visa was sealed and signed or signed and certified. Thus, the court did not make a finding as to whether the document qualified as self-authenticating and is therefore admissible. Rather, the court generally found the information regarding the Russian adoption insufficient. The record before us is unclear as to whether the court, upon reviewing the IR-3 visa, found the necessary indicia for it to qualify as a self-authenticating document.

Alternatively, under N.J.R.E. 901, there is ample evidence to support a finding that the IR-3 visa is what it purports to be. For example, defendant's IR-3 visa bears an identification number, which is also contained on defendant's U.S. certificate of citizenship as the INP Registration Number, issued by the Department of Justice's Commissioner of Immigration and Naturalization.

14

Further, defendant's U.S. certificate of citizenship bears the signature of the U.S. Commissioner of Immigration and Naturalization.

Moreover, defendant provided additional, extrinsic evidence confirming his birth and adoption by decedent and L.G., including: (1) the Russian certificate of adoption with an apostille and English translation; (2) defendant's Russian birth certificate with a notarized English translation; (3) defendant's birth certificate in English identifying decedent and L.G. as parents with official seal affixed; (4) home study completed by Better Living Services, the adoption agency with a Russian translation; (5) statement of abandonment of child by birth mother with English translation; (6) termination of birth mother's parental rights with English translation; (7) Order of Government of Moscow allowing the adoption of defendant by decedent and his wife, dated April 1, 1994 with English translation; and (8) a Memo by the U.S. Embassy outlining the evidence required "for the U.S. Embassy in Moscow to process an immigrant visa for [the] adopted child."

The home study conducted prior to the adoption in Russia was completed by a licensed adoption agency, Better Living Services, approved by New Jersey to place children for adoption within the state. These additional documents lend further corroborating proof of the genuineness of the IR-3 visa.

15

Plaintiff argues that defendant did not request an evidentiary hearing to establish the authenticity of the documents; however, nor did plaintiff. He received the documents from defendant well in advance of the hearing on June 2, 2023, and he had sufficient time to investigate their authenticity. Plaintiff offered no extrinsic evidence to raise any question as to their validity.

A trial court in its function as gatekeeper determines admissibility of proofs and may rely on hearsay reports to make such determinations. State v. Torres, 253 N.J. 485, 511 n.5 (2023) (citing N.J.R.E. 104(a)(1); State v. Bacome, 440 N.J. Super. 228, 239 n.7 (App. Div. 2015), rev'd on other grounds, 228 N.J. 94 (2017)). Thus, even if the IR-3 visa were not deemed admissible as self-authenticating, the credible evidence in the record supports the admissibility of the IR-3 visa under N.J.R.E. 901.

Applying the statute to this case is consistent with settled law and public policy and does not contravene the substantive rights of the parties. However, even if we agreed with the court's determination that N.J.S.A. 9:3-43.2 should not be applied retroactively to this matter, our case law, specifically the holding in Zanzonico, supports the recognition of the Russian adoption decree under these circumstances. Zanzonico, 17 N.J. at 494-98.

In sum, the court erred in not applying N.J.S.A. 9:3-43.2 or decisional law to recognize the Russian adoption decree. The court also erred in not accepting the documentation of defendant's IR-3 visa to establish the validity of his adoption. Based upon our careful review of the competent evidence presented, we conclude the court's findings that there was insufficient evidence to validate the Russian adoption was against the weight of the credible evidence.

We are satisfied that sufficient information was before the court to validate and recognize the Russian adoption decree pursuant to both decisional law and N.J.S.A. 9:3-43.2. Thus, we reverse and vacate the July 13, 2023 order and remand the matter for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3452-22