**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3447-19

JAMES O. WELCH, THE
ROBERT J. DWYER TRUST
and S. ALEXANDER and
JESSICA HAVERSTICK,

      Plaintiffs,

and

VIRGINIA WELCH,

      Plaintiff-Respondent,

v.

CHAI CENTER FOR LIVING
JUDAISM, INC.,

      Defendant-Appellant,

and

HARRY GROSS,

      Defendant.

_____

Submitted December 7, 2021 – Decided September 9, 2022

Before Judges Messano and Accurso.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000153-12.

Epstein Ostrove, LLC and Philip Pfeffer (Herbert Smith Freehills New York, LLP), attorneys for appellant (Elliot D. Ostrove and Philip Pfeffer, on the briefs).

Connell Foley LLP, attorneys for respondent (Kevin J. Coakley and Nicole B. Dory, of counsel and on the brief; Mary Hurley Kellett, on the brief).

PER CURIAM

In 2014, the Chancery Division entered judgment for plaintiff Virginia Welch and others, on count II of her 2012 complaint in which she sought, inter alia, to declare defendant Chai Center for Living Judaism, Inc.'s "current uses of Lot 10 [1 Jefferson Avenue, Short Hills] as violative of the restrictions in the 1949 deed" and "[e]njoining the current uses of Lot 10 and restricting the uses of Lot 10 to residential use in conformance with the restrictions in the 1949 deed." Acknowledging, however, that Chai Center had "been functioning as an Orthodox Jewish synagogue serving as a place of worship" for many people for almost ten years, the judge sua sponte stayed the judgment pending appeal. We affirmed that judgment in its entirety, Welch v. Chai Ctr. for Living Judaism, Inc., A-4088-13, A-4163-13 (App. Div. Aug. 15, 2016), and

2

the Supreme Court denied Chai Center's petition for certification, Welch v. Chai Ctr. for Living Judaism, Inc., 230 N.J. 402 (2017).

When Chai Center continued its operations with little change after it had exhausted its appeal, counsel for Welch sent cease and desist letters in 2018 and 2019. When those letters did not induce compliance with the judgment, Welch filed a motion in aid of litigant's rights under Rule 1:10-3. Relying largely on Chai Center's own website and Facebook pages, Welch included in her motion papers hundreds of pages of advertisements, posts and photos documenting the non-residential activities on the property, including weekly religious services, celebrations and services for religious holidays, an adult religious education program, and a Hebrew school. By including documents from both before and after the first appeal, Welch documented the activities that continued on the property after the Supreme Court denied certification in 2017.

Among those documents was a July 3, 2019 printout from Chai Center's website advertising events held at 1 Jefferson Avenue between March and June 2019, including weekly prayer services on Sunday, Monday, Thursday, Friday and Saturday "open to all," and offering kiddush luncheon sponsorships for $375; a matzah baking class for children for $10; community seders at $54 per

A-3447-19

adult and $25 per child; an annual Shavuot Torah reading and buffet luncheon; an evening lecture for $12; and a concert for $20. Welch included another printout from the website advertising twice-weekly Torah and Talmud study classes "open to all regardless of background or affiliation," and a Hebrew school calendar from September 2018 through May 2019. Welch also attached printouts from Chai Center's Facebook page advertising a speaking event and book-signing at 1 Jefferson Avenue in December 2018, a Shabbat dinner in January 2019 for $18 per adult, $10 per child and $54 per family and a Hamantash baking event in March 2019 for $10 per baker.

Welch also submitted certifications and a report from a research analyst who conducted an internet "sweep" of publicly available information pertaining to Chai Center, which included photographs and descriptions from Facebook and Instagram of holiday celebrations and Hebrew school events held at 1 Jefferson Avenue, social media advertisements of events scheduled there and newspaper articles describing those events.

Finally, Welch included in her motion papers certifications and a report from a private investigator whose team conducted in-person observations of 1 Jefferson Avenue for eight days in March and April 2019. The investigator certified on the first day of the investigation, Thursday, March 21, 2019, the

team observed between thirty-five and forty cars on the property in the evening, which matched an advertisement for a lecture on Chai Center's website. The investigator estimated approximately 100 people attended the event based in part on the number of people they observed in the cars. On another night coinciding with an advertised lecture, investigators observed several cars arrive and later depart in the evening. The investigator noted as many as three cars in the driveway that evening and another fifteen parked at the rear of the property. On the last day, a Saturday, the investigator reported as many as eighteen cars parked at 1 Jefferson and two cars parked on a nearby side street whose occupants walked over to the property.

Chai Center opposed the motion, producing an unsigned settlement agreement between Chai Center, Rabbi Mendel Bogomilsky, the spiritual leader of Chai Center and his wife, and Millburn Township, its zoning board and several elected or appointed officials and employees resolving four zoning cases. In exchange for $750,000 from Millburn's insurers to Chai Center, the Center and the Bogomilskys agreed not to file any application for a variance to use 1 Jefferson as a "House of Worship" or to challenge in court, or otherwise, the constitutionality or validity of the "House of Worship" prohibition in the Township's zoning ordinance as it pertained to the property. Chai Center and

A-3447-19

the Bogomilskys also agreed not to use 1 Jefferson as a "House of Worship" and to other limitations, including that they would not conduct any child care at the property except as permitted in the zoning ordinance; would not conduct Rosh Hashanah or Yom Kippur services at the property, nor bat or bar mitvah parties, weddings, graduations, banquets or similar events for anyone other than their family, and would not advertise to the general public in any media any events at 1 Jefferson, including family member events. They also agreed to limit large gatherings to five per year, limit the number and size of non-family vehicles on the property and require them to be parked in the driveway and not on the lawn. The agreement also included a liquidated damages schedule, permitting the Township to recover up to $5,000 per violation of the agreement.

Chai Center also presented the certification of Bogomilsky describing three "dramatic changes" in the use of 1 Jefferson following entry of the 2014 Chancery Division judgment, to wit, he and his family moved "full time" to the property in August 2015 (they had previously lived there only on weekends and religious holidays), the Center moved its "High Holiday services to Millburn Middle School" and "larger events (such as the annual Menorah Lighting and the Lag b'Omer celebration) are no longer held at the property,

and instead are held at municipal parks."  But beyond noting that Welch's investigator's report did not account for how many cars belonged to the Bogomilsky family, including their "three married children, who spend most weekends with [them]," and that the media "evidence" in the report of Welch's research analyst supported his averments and not Welch's "false narrative," Bogomilsky did not deny the very specific allegations made in the certifications Welch presented in support of her motion, a fact admitted by Chai Center's counsel at oral argument in the Chancery Division.

In response to a specific question from the court as to whether the Bogomilskys denied that other activities "not associated with their residential lives" take place at 1 Jefferson, their counsel said, "No.  They are not denying that any other activities take place there."  Counsel made clear the Bogomilskys "welcome people into their home to gather, to study and to learn, and to enjoy the holidays."  Counsel argued, however, that it was "the Township, through its police power, that gets to decide what is appropriate use of a residential home," and not the Welches.  Counsel further argued the stay the Chancery judge entered sua sponte in 2014 had never been lifted; that the 1949 deed restriction only limited the type of building on the property and not the use of the property; that the 2014 "decision was specifically addressing the

A-3447-19

proposed use of the lot, the proposed building at the lot, which was to build something other than a single family home, notwithstanding . . . that the proposal was to build a synagogue that looked like a single family home so as to not interrupt the neighborhood"; and that at the time of the judgment, "1 Jefferson wasn't [the Bogomilskys'] full-time residence."

When the judge followed up by asking whether it was Chai Center's position that so long as the property only contained one house and a garage for one family, "anything else [the Bogomilskys] do there is not in violation" of the 2014 judgment, counsel replied "so long as it is consistent with the use of a private residence." And when the judge asked whether it was "their contention that everything that they have been doing is consistent with the use of a private residential house," counsel responded, "correct." The court then reviewed with counsel the advertisements referenced above on Chai Center's own website, asking if the "events that are described here, the invitations, the charges for them, the regularity of them and the types of events, that that is just typical of what would take place in anybody's residence," counsel responded "there is nothing inconsistent with those events with the use of a single family home," and that there was "nothing in any court order . . . that has been presented otherwise."

8

After hearing argument, the court granted Welch's motion to enforce the 2014 judgment. After summarizing the history of this long-running neighbor dispute over Chai Center's use of a home burdened by a deed restriction in a residential neighborhood as a shul, the court again ordered Chai Center to cease any non-residential activities on the property, "including but not limited to operating a synagogue or shul," and to stop advertising activities the court has precluded.

The court rejected Chai Center's argument that the 2014 judgment was limited to the synagogue the Center proposed to build on the property and not its ongoing use as a synagogue or shul, reasoning that if that were true, there would have been no reason for the judge hearing the case in 2014 to have stayed his judgment. The court also rejected the argument that the stay somehow had never been lifted following the Court's denial of Chai Center's petition for certification, noting the judge made "it clear that the sole purpose of that stay was pending the appeal."

The court rejected Chai Center's argument that it lacked "guidance" as to what would be permitted at the property and was "not clear what restrictions there are" as "disingenuous." The court pronounced itself "particularly persuaded" by the documents Welch submitted on the motion from Chai

9

Center's own website, advertising "a litany of activities . . . to the public and inviting everybody to this residential location, 1 Jefferson Avenue, Short Hills for open times, for various different holidays, various different activities, charging entry fees every month, more than once a month with these invitations going out," and noted the surveillance reports linking forty cars on the property to an advertised event "apparently taking place." Although acknowledging the three changes Bogomilsky claimed the Center had made since entry of the 2014 judgment, based on Welch's submission of the documents from Chai Center's website and Facebook page, the court found it "just does not accept" that 1 Jefferson "is being used as nothing more than a single family residence for the rabbi and his family."

Finding a clear violation of the 2014 judgment, the judge entered an order enforcing it and directed Welch to submit a certification for the counsel fees she had incurred on the motion. The judge also noted she would "consider sanctions next time" in the event of further violations. Welch thereafter submitted an application for fees and costs of $81,461.67, which Chai Center opposed.

In a comprehensive written statement of reasons for awarding Welch fees, the judge found Welch was entitled to counsel fees for the Center's

10

"willful failure to comply with the court's prior Order."  The judge wrote, "[c]learly, defendants knew or should have known that their activities at the property," including their "many advertisements online to the general public for a range of activities," many for which they charged "entry fees," were "non-residential" uses that violated the April 2, 2014 Order.  The judge noted, however, that three experienced partners billed time on the enforcement motion, two of whom had worked on the case since its inception, where one would have sufficed.  Applying one of the partner's $410 hourly rate, which the judge deemed reasonable based on the lawyer's experience and fees in the area, and reducing the hours to what she deemed was a reasonable expenditure of time for the tasks noted, the court awarded Welch $25,994 in fees and $5,915.57 in costs for a total of $31,909.57.

Chai Center appeals, arguing the 2014 judgment was insufficiently specific to support Rule 1:10-3 relief, and that the court erred by finding it willfully violated the 2014 judgment based on incompetent evidence, improperly infringed on its religious rights, and imposed counsel fees as a sanction.  Our review of the record convinces us that none of these arguments is of sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

A-3447-19

As the Chancery judge noted, Chai Center and the Bogomilskys' continued operation of a shul at 1 Jefferson, evidenced by documents and photos from the Center's website and Facebook page, did not constitute trivial or isolated violations of the 2014 judgment but a wholesale flouting of its terms. The property is burdened by a deed restriction, which the Bogomilskys knew when they purchased it. Welch and other neighbors litigated the continued vitality of that restriction in protracted proceedings at great expense to themselves. Although awarding judgment to Welch and her fellow plaintiffs upholding the restriction and declaring Chai Center and the Bogomilskys' then "current uses of Lot 10 as violative of the restrictions in the 1949 deed," "[e]njoining the current uses of Lot 10" and restricting its future use "to residential use in conformance with the restrictions in the 1949 deed," the judge, sua sponte, stayed his judgment in light of the proofs that the synagogue had served approximately 100 families for many years — over the objections of its residential neighbors.

In light of the extensive, competent, evidence Welch put before the court on her enforcement motion, the judge rejected as "disingenuous" the Center and the Bogomilskys' arguments that the stay of the 2014 judgment had never been lifted, the Bogomilskys' full-time move to the property following entry of

the judgment constituted changed circumstances, the judgment enjoined only the new structure Chai Center proposed to build on the lot and not its many years' use as a shul operating out of the single family home on the property, no court had ever adjudicated the uses to which the property could be put consistent with the deed restriction and the 2014 judgment was too vague to enforce — as do we.[1] In addition, we've already ruled the deed restriction and

---

[1] The court addressed the competency of the evidence on the motion, which Chai Center raised in its brief opposing the motion, but did not continue to press at oral argument, likely for good reason. As our Supreme Court has explained, "[e]videntiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010). We will only disturb such determinations when we find "a clear error of judgment," State v. Koedatich, 112 N.J. 225, 313 (1988), which we do not find here. It is hornbook law that "[p]roof of authentication may proceed with relatively little attention to detail and technicality." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 901 (2022-23). All that is required of the proponent is "evidence sufficient to support a finding that the item is what its proponent claims." N.J.R.E. 901. Social media posts require no special authentication in our State, and are readily admitted, especially in a bench trial, as here, where the judge is the fact-finder. State v. Hannah, 448 N.J. Super. 78, 89 (App. Div. 2016). We are satisfied Welch produced prima facie proof linking the posts with Chai Center, which did not deny they came from its own website and Facebook pages. The Center's argument that Welch was precluded from arguing on appeal that the documents were also properly admissible under N.J.R.E. 803 and supported the Chancery Division's Rule 1:10-3 order is simply incorrect. See Tymczyszyn v. Columbus Gardens, 422 N.J. Super. 253, 256 n.1 (App. Div. 2011) (noting a respondent is free to raise alternative arguments in support of the trial court judgment).

2014 judgment did not infringe defendants' religious liberty, distinguishing the case from State v. Cameron, 100 N.J. 586, 604 (1985), and they've offered nothing to persuade us to revisit our analysis. Welch, slip op. at 18.

This matter does not involve a government restriction on religious activity. The Chancery Division has simply upheld — and now enforced — a contractual covenant between private parties. Thus, Kali Bari Temple v. Board of Adjustment of Township of Readington, 271 N.J. Super. 241 (App. Div. 1994), on which the Center relies in support of its argument, is inapposite. Chai Center's argument that the settlement of the zoning cases, purportedly defining the "ancillary permissible use" of 1 Jefferson, controls here is similarly unavailing. Welch was not a party to those proceedings, and settlement of the municipal zoning litigation has no bearing on the 2014 judgment or its enforcement.

Finally, we reject Chai Center's argument that the court abused its discretion with its award of fees and costs because it imposed punitive relief for the Center's noncompliance with a vague order, failed to consider that the settlement agreement obviated the need for the motion, and entered an unreasonable fee award.

14

As an initial matter, the Center misapprehends the fee order it appeals. The Chancery court did not impose "punitive" or coercive relief on the Center; it merely awarded Welch her reasonable costs for her motion to enforce the 2014 judgment.  See R. 1:10-3 (permitting "an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule" in the court's discretion).  Thus, its argument that the award must be reversed because the Chancery judge did not find it in willful noncompliance of the 2014 judgment (although she plainly did) is misplaced.  See In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17 (2015) (noting "[t]he focus being on the vindication of litigants' rights, relief sought pursuant to Rule 1:10-3 does not necessarily require establishing that the violator of an order acted with intention to disobey"); Lusardi v. Curtis Point Prop. Owners Ass'n, 138 N.J. Super. 44, 49 (App. Div. 1975) (explaining "wilful disobedience" of the order sought to be enforced is "irrelevant in a proceeding designed simply to enforce a judgment on a litigant's behalf").  Although the judge certainly could have imposed a coercive sanction to compel Chai Center's compliance with the judgment, see Milne v. Goldenberg, 428 N.J. Super. 184, 198 (App. Div. 2012), she did not do so, although warning she would "consider sanctions next time" in the event of further violations.

A trial court's decision to impose fees and the amount awarded are matters committed to its considerable discretion, <u>Grow Co. v. Chokshi</u>, 424 N.J. Super. 357, 367 (App. Div. 2012), which we will disturb "only on the rarest occasions, and then only because of a clear abuse of discretion," <u>Rendine v. Pantzer</u>, 141 N.J. 292, 317 (1995).  This is not one of those rare occasions.  To the contrary, we are satisfied the judge carefully considered Welch's application in light of the long history of this case and the time required to bring and argue the enforcement motion and entered a fair award.

In sum, because the record supports the Chancery judge's finding that Chai Center and the Bogomilskys have simply ignored the judgment Welch and her neighbors obtained in 2014, and we cannot find any abuse of discretion in the award of fees on the motion, we affirm the Chancery court's orders of October 4, 2019, and February 27, 2020.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION